[Crim. No. 11871. Second Dist., Div. One. June 28, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM SOSA, Defendant and Appellant.

## COUNSEL

Herbert F. Blanck, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Howard J. Schwab and Donald J. Oeser, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**LILLIE, Acting P. J.**—A jury found defendant and Lisboa guilty of first degree murder. On defendant's appeal from the judgment the same was affirmed. (*People* v. *Sosa* (1967) 251 Cal.App.2d 9 [58 Cal.Rptr. 912].) Petition for hearing in the Supreme Court of California and petition for writ of certiorari in the United States Supreme Court were denied. Subsequently, pursuant to defendant's petition, the Supreme Court of California ordered the proceeding transferred to this court with directions to recall the remittitur as to defendant, vacate the judgment as to him, and determine his appeal in light of *Bruton* v. *United States*, 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620]; *Roberts* v. *Russell*, 392 U.S. 293 [20 L.Ed. 2d 1100, 88 S.Ct. 1921]; and the harmless error rule of *Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

Defendant and Lisboa were tried jointly;[1] there was overwhelming evidence that they murdered Thomas Takada in his room on the fourth floor of a hotel. (*People* v. *Sosa,* 251 Cal.App.2d 9, 11-17 [58 Cal.Rptr. 912].) Mrs. Rivera, who lived on the fourth floor, heard Mr. Takada cry out, went to the door of his room and heard two men talking very low inside the room; through a crack in the door she saw Mr. Takada lying "all bloodied" on the bed either unconscious or dead, then saw him breathe; as she started to leave to call an ambulance, the door "flew open" and Lisboa started out; she looked in the room and saw defendant severely strike Mr. Takada several times with a three-foot pipe, as though he were "chopping wood"; she shouted "What are you doing" and ran for help. Soon thereafter defendant was arrested in the lobby;[2] dried blood was on his hands. Defendant's fingerprint was on the door of Takada's room; the pipe was laying against Takada's bed, and the bed and walls were covered with blood. Victor Caldera testified that Sosa and Lisboa went upstairs from the lobby shortly before Mr. Takada was beaten, and returned to the lobby 15 minutes later. Mr. Takada died of a fractured skull; and, in the opinion of the autopsy surgeon, the fractured skull and other broken bones (arm, collar bone) resulted from impact by a blunt mechanical force, such as an iron pipe.

In his defense, defendant denied he went upstairs from the lobby and killed Mr. Takada. Lisboa testified that on two occasions, including the evening of the murder, defendant suggested they rob Mr. Takada; he refused to participate and went to his (Lisboa's) room; a few minutes later he heard noises from Takada's room; the door was open and he saw defendant hitting Takada with a pipe, then drop the pipe and strike Takada with a screwdriver; he told defendant "not to do that," but defendant said that he did not care, he wanted the money.

On cross-examination, Lisboa was questioned regarding statements he had made to Officer Alexander after the arrests. Lisboa admitted that he made the statements (to the effect that defendant said he was going to break into Mr. Takada's room and rob him, and later he [Lisboa] saw defendant in the room hitting Mr. Takada and there was blood on the bed) and that he signed a written version of the statements; however, he testified that he did not understand the writing because he "didn't know any English." In rebuttal, the officer testified that Lisboa appeared to speak and understand English very well.

---

[1]Defendant Sosa's motion for severance of the trial, made on the ground that Lisboa's extrajudicial statement would implicate Sosa, was denied.

[2]Sosa and Lisboa lived in a room on the fourth floor.

Our Supreme Court in *In re Whitehorn*, 1 Cal.3d 504 [82 Cal.Rptr. 609, 462 P.2d 361], said of *Bruton* v. *United States*, 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620] at page 509 "As we recently explained in *In re Hill* (1969) 71 Cal.2d 997, 1008 [80 Cal.Rptr. 537, 458 P.2d 449], '*Bruton* holds that it is a denial of the right to cross-examination, guaranteed to a defendant in a criminal case by the confrontation clause of the Sixth Amendment, to admit at a joint trial an extrajudicial confession of a codefendant which implicates the defendant, despite instructions to the jury to disregard the confession as evidence against the non-confessing defendant.' "[3] The court in *Roberts* v. *Russell* (1968) 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921], held that *Bruton* was to be applied both to state and federal prosecutions, with full retroactivity without regard to time, since the error involved goes to the fairness of the guilt-determining process. (See *In re Whitehorn*, 1 Cal.3d 504, 509 [82 Cal.Rptr. 609, 462 P.2d 361]; *In re Hill*, 71 Cal.2d 997, 1008 [80 Cal.Rptr. 537, 458 P.2d 449].)

Of *Bruton*, the court in *Nelson* v. *O'Neil*, 402 U.S. 622 [29 L.Ed.2d 222, 91 S.Ct. 1723], said at pages 626-627 [29 L.Ed.2d at pages 226-227] that " 'confrontation' guaranteed by the Sixth and Fourteenth Amendments is confrontation *at trial*—that is, that the absence of the defendant at the time the codefendant allegedly made the out-of-court statement is immaterial, so long as the declarant can be cross-examined on the witness stand at the trial. . . . The Constitution as construed in *Bruton*, in other words, is violated *only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for 'full and effective' cross-examination." See *United States* v. *Zito*, 451 F.2d 361, 363, wherein the court stated, citing *Nelson*, that *Bruton* applied " '*only* where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for "full and effective" cross-examination.' "[4]

■ Here, Lisboa was available at the trial for "full and effective"

---

[3]Here, the jury was admonished that Lisboa's out-of-court statement was applicable to Lisboa only, and not to defendant Sosa.

[4]Cf. *In re Whitehorn*, *supra*, 1 Cal.3d 504, 511 (decided December 26, 1969, more than one year prior to the date [June 1, 1971] of the decision in the *Nelson* case) wherein our Supreme Court said, with reference to *Bruton*, that "the admission at a joint trial of an extrajudicial confession of a codefendant which seriously implicates the defendant deprives the latter of his right to confrontation even if the confessing codefendant takes the stand and gives testimony in accordance with his prior confession." However, on June 23, 1970, the United States Supreme Court in *California* v. *Green*, 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930] held "that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." (399 U.S. at p. 158 [26 L.Ed.2d at p. 497].)

cross-examination. On direct examination he testified that defendant struck the victim with a pipe; on cross-examination by the deputy district attorney he admitted he made the out-of-court statement which implicated defendant; and on detailed cross-examination by defendant's counsel, he was questioned regarding his testimony that defendant struck the victim, and defendant's counsel had ample opportunity to cross-examine Lisboa regarding the out-of-court statements.

Appellant argues, however, that in *Nelson,* the codefendant (Runnels) in the joint trial *denied* making the out-of-court statement which implicated the defendant and testified favorably to him, whereas here, Lisboa affirmed the out-of-court statement which implicated him and testified unfavorably to him, therefore *Nelson* is not applicable. In support of his argument appellant refers to *Nelson* at pages 228-229 [29 L.Ed.2d] wherein the court said in substance that had Runnels (codefendant) affirmed his out-of-court statement, the defendant would have been in far worse straits because cross-examination of Runnels would have been futile; and that Runnels' testimony regarding the statement was more favorable to the defendant than any that cross-examination could have produced had Runnels affirmed the statement as his. He argues, therefore, that the court's conclusion in *Nelson* that defendant had not been denied rights protected by the Sixth and Fourteenth Amendments was limited to cases wherein a codefendant denies his out-of-court statement. The import of the above-cited portion of *Nelson* appears to be that the defendant would have been worse off if the codefendant had affirmed the statement because cross-examination would have been futile, but *Nelson* did not state that where a codefendant affirms his out-of-court statement, the case would not come within the stated rule that defendant's confrontation rights are violated *only* where the out-of-court statement is that of a declarant who is unavailable at the trial for full and effective cross-examination. Whether a codefendant who testifies affirms or denies his out-of-court statement, he is available for full and effective cross-examination. Admission of Lisboa's testimony regarding his out-of-court statements was not error.

 There was overwhelming direct and circumstantial evidence, apart from Lisboa's testimony regarding his statements implicating defendant, pointing to defendant's guilt, thus we declare any error in the admission of evidence of Lisboa's statements "was harmless beyond a reasonable doubt." (*Chapman* v. *California, supra,* p. 24 [17 L.Ed.2d at p. 711]; *In re Whitehorn, supra,* p. 517; *People* v. *Wade,* 15 Cal.App.3d 16, 24 [92 Cal.Rptr. 750].)[5] An eyewitness saw defendant twice strike the victim with a lead

---

[5]"*People* v. *Houston,* 10 Cal.App.3d 894, at page 899 [89 Cal.Rptr. 351], held that, where the declarant is available for cross-examination, an *Aranda* or *Bruton*

pipe as though he were "chopping wood"; another saw defendant go upstairs from the lobby shortly before the offense was committed. and return 15 minutes later; defendant had blood on his hands when he was arrested in the lobby; the pipe was found near the victim's bed; and defendant's fingerprint was on the door of the victim's room.

Appellant attempts to advance a separate contention that the trial court erred in giving an instruction that a witness is presumed to speak the truth, citing *People* v. *Thomas,* 267 Cal.App.2d 698, 705 [73 Cal.Rptr. 590].[6] The cause is presently before this court upon order of the Supreme Court of California to recall the remittitur, vacate the judgment, and determine the appeal in light of *Bruton, Roberts* and *Chapman,* which determination we have made. However assuming appellant's additional contention to be properly before the court, and assuming further that any error existed in giving the instruction, such error would not have been prejudicial, for in its absence it is not reasonably probable that a result more favorable to defendant would have been reached. (*People* v. *Watson,* 46 Cal. 2d 818, 836 [299 P.2d 243]; *People* v. *Thomas,* 267 Cal.App.2d 698, 704 [73 Cal.Rptr. 590].) Among other things, the trial court gave instructions as to factors by which the presumption might be overcome, and the jury presumably weighed such factors; the instruction regarding the presumption did not lessen the effect that proof of guilt had to be proved beyond a reasonable doubt; and there was overwhelming evidence of defendant's guilt.

Other contentions previously raised on appeal have been decided adversely to appellant (*People* v. *Sosa,* 251 Cal.App.2d 9 [58 Cal.Rptr. 912]); we do not again discuss them inasmuch as petition for hearing in the California Supreme Court and petition for writ of certiorari in the United States Supreme Court were denied and subsequently on defendant's petition, the cause was returned for our determination of the appeal in the light of *Bruton* v. *United States,* 391 U.S. 123 [20 L.Ed.2d 476, 88

---

error is not one of constitutional dimensions, and that the proper test is whether it is reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error (*People* v. *Watson,* 46 Cal.2d 818, 834-838 [299 P.2d 243])." (*People* v. *Martin,* 17 Cal.App.3d 661, 669-670 [95 Cal.Rptr. 250].) Here, any error in admitting evidence of Lisboa's statement "was not prejudicial either under the *Chapman* or the *Watson* standard." (*Id.* at p. 670.)

[6]Such instruction was predicated upon the first sentence of former section 1847 of the Code of Civil Procedure, which was repealed effective January 1, 1967. Trial herein occurred in September 1965.

S.Ct. 1620] and *Roberts* v. *Russell,* 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921].

The judgment is affirmed.

Thompson, J., and Clark, J., concurred.